UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NAIM QASEMI,

                                        Petitioner,                          Case # 25-CV-668-FPG

v.

                                                                              DECISION & ORDER

STEPHEN KURZDORFER, et al.,

                                        Respondents.

## INTRODUCTION

Petitioner Naim Qasemi, a native and citizen of Afghanistan, has a final order of removal. In advance of his removal, Petitioner was taken into immigration custody on May 1, 2024. In October 2024, immigration authorities attempted Petitioner's removal to Afghanistan, but that effort failed when Petitioner caused a commotion at the Abu Dhabi airport prior to boarding. He was returned to the Buffalo Federal Detention Facility. In January 2025, Petitioner filed a habeas corpus petition under 28 U.S.C. § 2241, challenging his continued detention. That petition was docketed as *Qasemi v. Garland*, No. 25-CV-6020. Applying the standard set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), this Court denied habeas relief in April 2025. No. 25-CV-6020, ECF No. 14. The Court did so "without prejudice to renewal in the future." *Id.* at 12. In May 2025, the Court denied Petitioner's motion for reconsideration. No. 25-CV-6020, ECF No. 18. Petitioner did not appeal.

Less than three months later, Petitioner filed the present action. ECF No. 1. He alleges that he is now entitled to habeas relief under *Zadvydas*. Additionally, he seeks relief on a new theory—that he will not be afforded notice or an opportunity to be heard should immigration authorities decide to remove him to a country other than Afghanistan. In response, Respondents

moved to dismiss the petition.  ECF No. 11. The case is now fully briefed.  For the reasons that follow, the request for habeas relief is DENIED, and the petition is DISMISSED WITHOUT PREJUDICE.

## DISCUSSION

A description of the events underlying the first petition may be found in the Court's April 9, 2025 Decision & Order.  *See Qasemi v. Garland*, No. 25-CV-6020, 2025 WL 1064736, at *1-6 (W.D.N.Y. Apr. 9, 2025).  Since the resolution of the first petition, Petitioner has remained in immigration custody at the Buffalo Federal Detention Facility.  He has been detained for over seventeen months.

Respondents have submitted the declaration of Nicholas Truax, a deportation officer at the facility.  He explains that, since the resolution of the first petition, immigration authorities have "continued to try to execute [Petitioner's] order of removal."  ECF No. 11-2 at 2.  They continue to negotiate with Afghanistan to effectuate Petitioner's removal, which had been hampered by certain changes in entry requirements, *see Qasemi*, 2025 WL 1064736, at *5.  And because federal law permits immigration authorities to remove noncitizens to countries besides their countries of origin, *see generally* 8 U.S.C. § 1231(b), immigration authorities have investigated removals to other countries, including Mexico, Brazil, and the United Kingdom.  *See* ECF No. 11-2 at 2.  Truax avers that "ICE is actively working with the Department of State and DHS" to effectuate Qasemi's removal, and intends to request an official "travel letter" from Afghanistan in the "very near future."  *Id.* at 2-3.  On the basis of this evidence, Respondents maintain that "[Petitioner's] removal is significantly likely to occur within the reasonably foreseeable future."  ECF No. 11-1 at 7.

Petitioner argues that relief pursuant to *Zadvydas* is now warranted. His primary contention is that the tazkira in Respondents' possession is not, in fact, his, such that "the government did not have a proper travel document [when it attempted to remove Petitioner in October 2024] and does not have one now" to obtain a travel letter from Afghanistan. ECF No. 1 at 11. In Petitioner's view, this proves that his removal to Afghanistan is unlikely. *See id.* at 14-15.

Separate from his challenge to continued detention, Petitioner seeks relief on the theory that immigration authorities may remove him to a third country before giving him sufficient notice and opportunity to present a claim under the Convention Against Torture ("CAT"). His concern arises out of certain guidance recently promulgated by the Department of Homeland Security ("DHS"), which permits, under certain circumstances, noncitizens to be removed to countries not listed in their removal orders without notice. *See D.V.D. v. D.H.S.*, 778 F. Supp. 3d 355, 367-68 (D. Mass. 2025). Petitioner alleges that he is a member of a certified class action brought against DHS seeking to impose additional procedural protections for "noncitizens like [Petitioner] facing summary removals to third countries where they have genuine CAT claims." ECF No. 1 at 4. Although a federal district court in Massachusetts initially granted a preliminary injunction imposing additional procedural protections, *see D.V.D.*, 778 F. Supp. 3d at 394, the Supreme Court issued a stay pending appeal. *See D.H.S. v. D.V.D.*, 145 S. Ct. 2153 (2025). While proceedings in the *D.V.D.* litigation remain ongoing, Petitioner alleges that he is presently enjoying no protection from summary removal to a third country. *See* ECF No. 1 at 15-16.

In his present petition, Petitioner raises four claims: (1) his continued detention is unlawful under *Zadvydas*; (2) his continued detention is unconstitutional as a matter of due process; (3)

Respondents' summary removal policy violates the Administrative Procedure Act; and (4) Respondents' summary removal policy is unconstitutional as a matter of due process. *Id.* at 19.

## DISCUSSION

The Court addresses the detention and removal claims separately, as set forth below.

### I.    Detention Claims

Petitioner argues that his removal in the reasonably foreseeable future is unlikely and that, as a result, he is entitled to release under *Zadvydas* and as a matter of due process. The Court is not persuaded.

Under 8 U.S.C. § 1231(a)(1)(A), "aliens ordered removed shall be removed by the Attorney General within [a] 90-day 'removal period.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 547 (2d Cir. 2009). "The government is required to detain an alien ordered removed until removal is effected, at least for the removal period." *Id.* (citing 8 U.S.C. § 1231(a)(2)). If removal is not effectuated within the removal period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

In addition, there is a "special statute [that] authorizes further detention if the Government fails to remove the alien" during the removal period. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). Specifically, 8 U.S.C. § 1231(a)(6) gives the government the discretion to detain certain categories of aliens:

> An alien ordered removed [1] who is inadmissible . . . [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . .

*Id.* (quoting 8 U.S.C. § 1231(a)(6)). By its plain language, the statute does not appear to impose any limitation on the length of an alien's detention. But in *Zadvydas v. Davis*, 533 U.S. 678 (2001),

the Supreme Court interpreted § 1231(a)(6) narrowly to avoid the possible constitutional problems with indefinite detention. It read the statute to impose certain implicit limitations on the government's authority to detain aliens falling into those categories. The court held that an alien could be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. This limitation is linked to the statute's "basic purpose," which is to "assur[e] the alien's presence at the moment of removal." *Id.* at 699.

The *Zadvydas* court also provided a framework under which habeas courts are to review claims challenging continued detention under § 1231(a)(6). The ultimate question for the habeas court is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* The presumptively reasonable period of detention is six months. *Id.* at 701. Once that period has passed, an alien bringing a claim bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the alien makes such a showing, "the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien. *Callender v. Shanahan*, 281 F. Supp. 3d 428, 436-37 (S.D.N.Y. 2017); *see also Nma v. Ridge*, 286 F. Supp. 2d 469, 475 (E.D. Pa. 2003). Due deference is owed to the government's views on these matters as well as its estimation of the likelihood of removal. *See Zadvydas*, 533 U.S. at 700 (stating that review "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and

concerns inherent in the necessarily extensive . . . efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters").

What constitutes the "reasonably foreseeable future" will depend on the length of detention.  That is, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.  In effect, the parties' respective burdens shift as the length of detention increases.  *See, e.g.*, *Alexander v. Attorney General U.S.*, 495 F. App'x 274, 276-77 (3d Cir. 2012) ("*Zadvydas* . . . suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief."); *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 406 (W.D.N.Y. 2009); *Lawrikow v. Kollus*, No. CV-08-1403, 2009 WL 2905549, at *12 (D. Ariz. July 27, 2009); *Shefqet v. Ashcroft*, No. 02 C 7737, 2003 WL 1964290, at *4 (N.D. Ill. Apr. 28, 2003).  Thus, as time passes, the mere existence of possible avenues for removal becomes insufficient to justify further detention; some evidence of progress is required.  *See Elashi v. Sabol*, 714 F. Supp. 2d 502, 506 (M.D. Pa. 2010); *Lawrikow*, 2009 WL 2905549, at *13; *Hajbeh v. Loiselle*, 490 F. Supp. 2d 689, 693 (E.D. Va. 2007); *Shefqet*, 2003 WL 1964290, at *5.  *But see Gathiru v. Banieke*, No. 15-CV-4247, 2016 WL 8671833, at *6 (D. Minn. Sept. 9, 2016) (noting that the mere "lack of visible progress" or the government's inability to provide a concrete timeframe for removal does not necessarily establish that removal is unlikely in the reasonably foreseeable future).

Having reviewed the record, the Court cannot conclude that Petitioner's removal in the reasonably foreseeable future is unlikely.

As an initial matter, the Court again finds that the total length of Petitioner's detention does not significantly weigh in his favor; as a result, the Court will not demand a significant showing of progress by Respondents.  While Petitioner has been detained for over seventeen months, much

of that period is not fairly attributable to Respondents.  As the Court found in the prior action, Petitioner's own noncooperation caused his initial period of detention to be wasted.  *See Qasemi*, 2025 WL 1064736, at *3-5; *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (summary order) ("[A] self-inflicted wound should not establish grounds for [a noncitizen's] *Zadvydas* claim.").

The Court reaffirms that conclusion notwithstanding Petitioner's attempt to relitigate the issue of his noncooperation at the Abu Dhabi airport.  He proffers a psychological evaluation performed by a licensed physician.  *See* ECF No. 5.  The evaluator diagnosed Petitioner with PTSD; concluded that he showed no signs of malingering; suggested that his difficulties with recall and memory may be attributable to his condition and history of trauma; and opined that continued detention and/or removal to Afghanistan would be psychological damaging, if not life threatening. *See* ECF No. 5 at 8-10.  From this, Petitioner explains that his disruptive behavior at the airport was "a normal trauma response to removal to a country where he fears torture."  ECF No. 1 at 10. Petitioner also argues that any disruption he caused was irrelevant because immigration authorities never had a proper travel document for him.  *See id.* at 11.  He alleges that the tazkira in the government's possession does not accurately state his name, his father's name, or his date of birth. *See id.*; ECF No. 1-3 (copy of certified translation).

None of this evidence undermines the Court's prior finding regarding noncooperation.  The psychological evaluation provides a more nuanced picture of Petitioner's disruptive behavior, suggesting that it may have been caused, at least in part, by his mental-health conditions, rather than an act of pure guile to avoid removal.  Even so, it does not change the fact that such disruption occurred and cannot be fairly attributed to immigration authorities.

More importantly, the additional evidence fails to resuscitate Petitioner's credibility, which the Court had previously found lacking. *See Qasemi*, 2025 WL 1064736, at *4-5.

In the prior action, Petitioner disavowed any connection to the tazkira at issue. Shortly after the incident at the Abu Dhabi airport, Petitioner wrote in a grievance that the tazkira was "forged" and "false." No. 25-CV-6020, ECF No. 6 at 49. A few months later, in a sworn declaration to this Court, Petitioner claimed that immigration authorities were "creating unlawful travel documents," referencing the tazkira at issue. *Id.* at 1-2. He further stated that he "do[es] not have documentation to state that [he is] an Afghanistan citizen." *Id.* at 2; *see also* No. 25-CV-6020, ECF No. 9 at 1 (stating that he has no identification documents). Other evidence submitted by Petitioner in connection with his first petition suggested that he came to the United States "without *any* documents." No. 25-CV-6020, ECF No. 9 at 11 (emphasis added). And in his counseled declaration, Petitioner claimed that he became "emotionally upset" at the Abu Dhabi airport in part because it was only then that he saw the tazkira and learned that the government did not possess a valid document for him. *See* ECF No. 13-1 at 3-4.

What has now come to light is that Petitioner himself provided the tazkira at issue to immigration authorities when he applied for asylum in 1989. In connection with that application, Petitioner stated in a sworn affidavit that the tazkira at issue belongs to him, ECF No. 17 at 7, 63, and he affirmatively identified the tazkira, by number, as his own, *see id.* at 11. And, contrary to his later claim, he expressly stated that he came to the United States with the tazkira, writing that it had been "issued by the Afghan government *to me* in 1981." *Id.* at 7 (emphasis added). Given this evidence, Respondents argue—quite reasonably—that "[f]or [Petitioner] to now challenge the translation and authenticity of a document that he previously submitted in support of a request for

the privilege of asylum—despite attesting under oath previously not only that it was his but how he came into possession of it—is extremely bold." ECF No. 15 at 2.

In a responsive letter signed by Petitioner's counsel—but not Petitioner himself—counsel argues that none of the statements contained in the asylum application should be attributed to Petitioner, because he was a minor and would have needed assistance to prepare the documents. ECF No. 19 at 1-2. Counsel also notes that the tazkira was originally translated by a Farsi interpreter, even though the original language was Pashto. *See id.* at 2. In counsel's view, this discrepancy "may have contributed to a misunderstanding about the nature of the document during the initial asylum proceedings." *Id.* Lacking from Petitioner's counseled response is any sort of explanation from Petitioner himself that would reconcile the wildly varying claims he has made about the tazkira throughout these two actions.

Thus, far from bolstering Petitioner's credibility, the present record reaffirms that "Petitioner's [position] involves several shifting, unlikely, and/or inconsistent elements, which, taken together, wholly undermine his credibility."[1] *Qasemi*, 2025 WL 1064736, at *4. As a result, the Court reaffirms that "Petitioner was uncooperative in his removal based on his refusal to board his flight to Afghanistan in October 2024," and that Petitioner "would have been able to fly to Afghanistan [at that time] absent his own conduct." *Id.* at *5. Given that Petitioner's noncooperation increased the length of his civil detention, immigration authorities are not properly charged with the more "onerous" burden that they would otherwise bear under the circumstances. *Cf. Hassoun v. Sessions*, No. 18-CV-586 2019 WL 78984, at *6 (W.D.N.Y. Jan. 2, 2019) ("At

---

[1] No hearing is necessary to make these credibility determinations. *See Qasemi*, 2025 WL 1064736, at *3 n.1. Nor is discovery, as Petitioner requests. *See* ECF No. 14 at 25-26. "Parties in a habeas proceeding are not entitled to discovery as a matter of course." *Atikurraheman v. Garland*, No. 24-CV-262, 2024 WL 2819242, at *5 (W.D. Wash. May 10, 2024). Insofar as Petitioner's request rests on its mere suspicions that Truax may not be truthful, the Court does not find good cause for discovery.

fourteen months of detention, Petitioner's removal need not necessarily be imminent, but it cannot be speculative.").

On the merits, the Court concludes that relief under *Zadvydas* is not yet warranted.  Based on the facts available, this is not a case where "removal seems a remote possibility at best." *Zadvydas*, 533 U.S. at 690.  Put differently, the record does not establish that immigration authorities are "either unwilling or, due to seemingly insurmountable barriers, incapable of executing an alien's removal."  *Ahmed v. Brott*, No. 14-CV-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015).  Truax's declaration shows that immigration authorities have been investigating various locations for removal and have continued to negotiate with Afghanistan.  *See generally* ECF No. 11-2.  Though Petitioner emphasizes the lack of visible progress towards his removal, "the reasonableness of detentions pending deportation cannot be divorced from the reality of the bureaucratic delays that almost always attend such removals," *Joseph K. v. Berg*, No. 18-CV-3125, 2019 WL 13254377, at *3 (D. Minn. Mar. 15, 2019).  This is especially true here, as immigration authorities are attempting to negotiate removal to a country with which the United States has no formal diplomatic relations and which has altered its own travel requirements during the course of those negotiations.  Due deference is owed to immigration authorities as they navigate these diplomatic barriers.  *See Zadvydas*, 533 U.S. at 700.  There is no evidence that political conditions with Afghanistan "render removal virtually impossible," nor are the delays in this case so "extraordinarily long" that the proper inference is that a travel document "will likely never issue." *Ahmed*, 2015 WL 1542131, at *4.

Accordingly, as before, the Court remains "satisfied that Respondents have made the necessary showing that there is a significant likelihood of removal in the reasonably foreseeable

future.  [] Petitioner's petition must be denied, without prejudice to renewal in the future." *Qasemi*,
2025 WL 1064736, at *6.

## II.    Summary-Removal Claims

Petitioner alleges that he is a member of the certified class in the *D.V.D.* litigation.  ECF
No. 1 ¶ 13.  Because the Supreme Court has stayed the preliminary injunction imposed by the
district court in that matter, Petitioner comes to this Court requesting similar relief.  *Compare
D.V.D.*, 778 F. Supp. 3d at 369-70, *with* ECF No. 1 at 7, 18-20.  Although Petitioner is no longer
subject to preliminary injunctive relief in the *D.V.D.* case, he remains a class member whose
equitable claims are presently being litigated in that forum.  It would be inappropriate for the Court
to inject itself into that ongoing litigation.  *See Sanchez v. Bondi*, No. 25-CV-2287, 2025 WL
2550646, at *2 (D. Colo. Aug. 20, 2025) (collecting cases); *I.V.I. v. Baker*, No. 25-1572, 2025 WL
1519449, at *2 (D. Md. May 27, 2025) ("It would be contrary to [] principles [of comity and
judicial economy] for [the court] to assert jurisdiction over virtually identical claims between
essentially the same parties.").  Therefore, Petitioner's summary-removal claims are denied
without prejudice to seeking any desired relief through the *D.V.D.* litigation.

## CONCLUSION

For the reasons stated herein, the request for habeas relief is DENIED, and the petition
(ECF No. 1) is DISMISSED WITHOUT PREJUDICE, as stated herein.  Respondents' motion to
dismiss (ECF No. 11) is DENIED AS MOOT; and Petitioner's request for discovery is DENIED.
The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: October 16, 2025
Rochester, New York                    HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York